1

2

3

4                    UNITED STATES DISTRICT COURT

5                    NORTHERN DISTRICT OF CALIFORNIA

6

7    ANDREEA MELISSA OLTEANU,                Case No.  24-cv-02347-JSC

8                     Plaintiff,

     v.                                       **ORDER RE MOTIONS TO DISMISS
9                                             AND PLAINTIFF'S VARIED
                                              REQUESTS FOR RELIEF**
10   ERIC GONZALES, et al.,
                                              Re: Dkt. Nos. 28, 32, 33, 44, 45, 49, 50, 52,
11                    Defendants.
                                              57, 59, 61, 62, 63, 72, 77, 81, 83, 84, 85, 87,

12                                            & 89

13

14            Plaintiff Andreea Melissa Olteanu (née Porcelli) sues Defendants for a financial conspiracy

15   to syphon funds from a Trust into numerous illegal funds and accounts.  (Dkt. No. 52-2 (First

16   Amended Complaint).)[1]  Certain Defendants have moved to dismiss the case and others have not

17   responded.  (Dkt. Nos. 28, 32, & 33.)  After carefully considering the arguments and briefing

18   submitted, the Court concludes oral argument is unnecessary, *see* Civ. L.R. 7-1(b),

19   and DISMISSES Plaintiff's First Amended Complaint.  Plaintiff has not pled sufficient facts to

20   justify a reasonable inference that any of the individual Defendants is liable for any of the alleged

21   misconduct.

22                                 **BACKGROUND**

23   **I.        Amended Complaint Allegations**

24            Plaintiff alleges a series of complicated schemes and activities aimed at some, one, or all of

25   the ten Defendants in this case.  At many points in her amended complaint, Plaintiff makes

26   allegations against "Defendants" but does not specify which of these Defendants is implicated in

27   ─────────────────

28   [1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the
     ECF-generated page numbers at the top of the documents.

United States District Court
Northern District of California

United States District Court
Northern District of California

specific activity. The Court first lays out Plaintiff's allegations in a nutshell before then reviewing allegations made against each Defendant.

### a. Allegations Summary

The complaint centers around the Michael & Anca Olteanu Trust (the "Trust"), which made Plaintiff the primary beneficiary and was created by Plaintiff's late father. (Dkt. No. 52-2 at 12.) The thrust of Plaintiff's complaint is that certain Defendants were involved in embezzling and laundering the money from the Trust for their own enrichment and also in connection with a Romanian criminal organization. (*Id.* at 12-14.) Plaintiff alleges this scheme led to "three assassination attempts" against her as well as the death of her late husband. (*Id.* at 19, 30.) As a result, Plaintiff sues for:

(1) RICO Violations under 18 U.S.C. §§ 1961-1968;

(2) Wire Fraud under 18 U.S.C. § 1343;

(3) Mail Fraud under 18 U.S.C. § 1341;

(4) Money Laundering under 18 U.S.C. § 1956;

(5) Money Laundering under 18 U.S.C. § 1957;

(6) Violating the Bank Secrecy Act under 31 U.S.C. §§ 5311- 5330;

(7) Violating Title III of the Patriot Act, 31 U.S.C. § 5318;

(8) Violating the Foreign Account Tax Compliance Act, 26 U.S.C. §§ 6038D, 1471-1474;

(9) Child Financial Exploitation, 42 U.S.C. §§ 5101-5118e;

(10) Wrongful Death under California Civil Code § 377.60;

(11) Failure to Investigate under California Penal Code § 832.7;

(12) Negligent Supervision and Training under California Government Code § 34000;

(13) Violation of the Fourteenth Amendment;

(14) Failure to Uphold Public Duty under California Penal Code § 830.1;

(15) Negligent Misrepresentation under California Civil Code § 1710;

(16) Injunction of an Obstruction of Justice under 18 U.S.C. § 1514;

(17) Embezzlement and Conversion under 18 U.S.C. § 641;

(18) Breach of Fiduciary Duty under 29 U.S.C. § 1109;

1    (19) Intentional Infliction of Emotional Distress;

2    (20) Civil Conspiracy;

3    (21) Reckless Endangerment under 10 U.S.C. § 914;

4    (22) Violations of the California Rules of Professional Conduct and ABA Model Rules;

5    (23) Elder Financial Abuse under California Welfare and Institutions Code § 15610.30.

6    Below the Court recites Plaintiff's allegations as made against each individual Defendant.

7        **b.  Eric Gonzales**

8    Eric Gonzalez is an employee of Merrill Lynch and a resident of California.  (Dkt. No. 52-

9    2 at 8.)  He is the Trust's financial advisor and took "covert operations to transfer substantial funds

10   from the Trust's accounts to various accounts under the control of the Defendants." (*Id.* at 13.)  He

11   "disguised [these transfers] as legitimate business expenses or purported investment

12   opportunities," and further disguised the transactions "through international wire transfers and the

13   creation of shell companies." (*Id.* at 13, 36.)  This conduct constituted embezzlement for Mr.

14   Gonzales's own personal gain.  (*Id.* at 13.)  Plaintiff requested information from Mr. Gonzales

15   about these transactions and he repeatedly refused to provide answers.  (*Id.* at 12-13.)

16   Eric Gonzales also helped coerced her then-minor children into accepting money into their

17   bank accounts for the purpose of laundering that money.  (*Id.* at 29.)  Mr. Gonzales's scheme

18   "indirectly contributed to the circumstances leading to" her ex-husband's death.  (*Id.* at 31.)

19   Plaintiff sues Mr. Gonzales under Counts 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 16, 17, 19, 20, 21, 23.

20       **c.  Anca Olteanu ("Mrs. Olteanu")**

21   Mrs. Olteanu is Plaintiff's mother.  (*Id.* at 9.)  She is also a resident of California and

22   trustee of the Trust.  Mrs. Olteanu conspired with Mr. Gonzales to transfer sums of money to

23   "unfamiliar and opaque accounts." (*Id.* at 9, 12.)  Plaintiff requested Mrs. Olteanu explain these

24   transactions but did not receive clear explanations.  (*Id.* at 12.)  While Mrs. Olteanu acted

25   willingly and actively tried to "cover up the misappropriation through deceitful communications

26   and false representations," (*id*. at 9), Mrs. Olteanu "suffers from dementia and legal blindness."

27   (*Id.* at 14.)  Because of her allegedly vulnerable position, Mrs. Olteanu was "unwittingly used as a

28   'mule' in the laundering scheme" for a Romanian organized criminal group by being "instructed to

United States District Court
Northern District of California

3

1    pick up large sums of cash from Western Union and deposit them into her Merrill Lynch account."

2    (*Id.*)

3        Mrs. Olteanu participated in some way in involving Plaintiff's then-minor children in the

4    money laundering scheme.  (*Id.* at 19.)  Mrs. Olteanu's "betrayal and involvement in the scheme

5    created a financial crisis that indirectly contributed to the conditions leading to" her husband's

6    death.  (*Id.* at 32.)

7        Plaintiff sues Mrs. Olteanu under Counts 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 16, 17, 18, 19, 20, 21.

8        **d.  Louis Schneider, Esq.**

9        Mr. Schneider is an attorney, though Plaintiff does not specify what Defendant or entity he

10   allegedly represents.  (*Id.* at 9.)  Mr. Schneider "obstruct[ed] the legal process" through his

11   representation of Defendants.  (*Id.* at 14.)  He aided "the planning and execution of wire fraud and

12   mail fraud, as well as helping the Defendants navigate legal challenges to avoid detection."  (*Id.* at

13   21.)  Mr. Schneider involved her minor children in the scheme (*id.* at 19), took advantage of her

14   elderly mother (*id.* at 14), and contributed to her husband's death (*id.* at 31.)

15       As to her husband's death, Mr. Schneider was "specifically involved in a conspiracy to

16   murder Mark Porcelli and falsely arrest" Plaintiff in order to "auction off" property that was at

17   issue in divorce proceedings between herself and her late husband.  (*Id.* at 31.)  After the death,

18   Mr. Schneider placed a lien on the property, which "caused severe financial, emotional, and

19   physical distress, contributing to the plaintiff's deteriorating heath, including a diagnosis of Stage

20   4 cancer."  (*Id.*)

21       Plaintiff sues Mr. Schneider under Counts 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 17, 19, 20, 21.

22       **e.  Angela & Calin Niculescu, and Costin Niculescu**

23       Angela, Calin, and Costin Niculescu (the "Niculescus") are California residents who are

24   alleged to have "used their personal and business accounts to launder the misappropriated funds."

25   (*Id.* at 9.)  The Niculescus were involved in "muling" Plaintiff's children, (*id.* at 29), and in

26   creating "a financial crisis and contribut[ing] to the circumstances surrounding" her husband's

27   death.  (*Id.* at 32.)

28       Plaintiff sues them under Counts 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 17, 19, 20, 21.

United States District Court
Northern District of California

### f.  Merrill Lynch Wealth Management[2]

Merrill Lynch failed to properly protect the Trust assets.  (*Id.* at 10.)  It was negligent in permitting the scheme and "consistently obstructed" efforts by Plaintiff to obtain information on the Trust assets.  (*Id.* at 42.)

Plaintiff sues it under Counts 1, 2, 3, 4, 5, 6, 7, 8, 9, 17, 19, 20, 21, 23,

### g.  Banca BRD & Société Générale S.A.

Banca BRD is a Romanian financial institution and Société Générale S.A. ("Société") is a New York institution.  (*Id.* at 10.)  These institutions received the "illegal transactions," failed to flag or report them, and this inaction furthered the ends of the conspiracy (*id.*), and "precipitated the murder" of her husband.  (*Id.* at 32.)  Further, these institutions "refused to produce any monthly statements for the period from October 2018 to October 2022, during which time the plaintiff was removed from the accounts by Anca Olteanu."  (*Id.* at 10.)

Plaintiff sues them under Counts 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 17, 19, 20, 21.

### h.  Christopher Ford and Ford & Friedman LLC

Mr. Ford and his firm (the "Firm") were Plaintiff's husband's divorce attorneys.  The Firm represented the defendants and thereby "obstruct[ed] the legal process."  (*Id.* at 14.)  The Firm, together with Louis Schneider, "orchestrated" the death of her husband and "terrorized her family with false arrests and fabricated bench warrants."  (*Id.* at 31.)  They "conspired with the [Henderson Police Department] to obstruct justice and conceal the true circumstances of [her husband]'s death."  (*Id.*)  Plaintiff makes the same allegations against the Firm as she does against Mr. Schneider.  (*Id.*)

Plaintiff sues Mr. Ford and the Firm under Counts 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 17, 19, 20, 21, 22.

//

---

[2] This Defendant has argued it is not a legal entity capable of being sued but is instead a trade name of Merrill Lynch, Pierce, Fenner, & Smith Incorporated.  (DKt. No. 28 at 8.)  Merrill Lynch, Pierce, Fenner & Smith Inc. has responded to the Complaint through a motion to dismiss.  This Court will construe Plaintiff's allegations against Merrill Lynch Wealth Management as against the legal entity Merrill Lynch, Pierce, Fenner, & Smith Incoporated.

United States District Court
Northern District of California

United States District Court
Northern District of California

### i.   Horia Tanasescu

Mr. Tanasescu transferred and concealed stolen funds.  (*Id.* at 11.)  Plaintiff does not specify his role in the conspiracy beyond alleging "[h]is logistical and financial support was essential to the success of the racketeering enterprise."  (*Id.* at 22.)

Plaintiff sues Mr. Tanasescu under Counts 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 17, 19, 20, 21.

### j.   Jonathan J. Brennan

Mr. Brennan is another attorney who is implicated in parts of the complaint but against whom no factual allegations are made.

Plaintiff sues Mr. Brennan under Count 22 alone.

### k.  Napa Police Department[3]

Plaintiff's allegations against the Napa Police Department ("Napa PD") revolve around the Department's alleged failure to "conduct a thorough investigation or take appropriate action to protect the Plaintiff's interests" after she reported the allegations set forth above.  (*Id.* at 10-11.) She alleges financial harm as well as complicity in the death of her late husband because of Napa PD's "failure to investigate."  (*Id.* at 11, 32.)

Plaintiff sues Napa PD under Counts 10, 11, 12, 13, 14, 15.

## II.     Procedural History

Plaintiff first filed a conservatorship against Defendant Anca Olteanu in Solano County Superior Court in June of 2020, alleging Mrs. Olteanu was senile and could not effectively manage the Trust.  (Dkt. No. 30-1.)  After an investigation into Mrs. Olteanu's mental and physical state, Plaintiff voluntarily dismissed her conservatorship action.  (Dkt. No. 30-2.)  On July 11, 2023, Plaintiff filed suit in the United States District Court for the District of Hawaii, alleging substantially the same facts as she does in her present suit.  (*See* Dkt. No. 30-3.)  After amending her complaint once, the Hawaii court dismissed Plaintiff's action for improper venue. (*See* Dkt. No. 30-5.)  In December of 2023, Plaintiff filed suit in the United States District Court

---

[3] The Napa Police Department is not a separate entity from the City of Napa.  The City of Napa has chosen to respond on its behalf as well as on behalf of Napa PD.  (Dkt. No. 33 at 5.)  The Court here refers to Napa PD to mean both the City of Napa and Napa PD.

1   for the District of Nevada, alleging the same wrongdoing as she does here, though she also

2   includes certain Nevada defendants not present in the current action. *See Olteanu v. Schneider et*

3   *al*, No. 2:23-cv-02006 (D. Nev. 2023).  Some months later, in April of 2024, Plaintiff initiated this

4   action in this District.  (Dkt. No. 1.)   In May 2024, Plaintiff instituted two actions in Napa

5   Superior Court requesting temporary restraining orders against the same defendants she requests

6   temporary injunctive relief against here.  (Dkt. Nos. 30-7, 30-8.)  Those actions have been

7   dismissed.  (*See* Dkt. Nos. 30-7, 30-8.)  And some days after initiating those emergency actions in

8   Napa Superior Court, Plaintiff instituted a second conservatorship proceeding in Solano Superior

9   Court against her mother, Defendant Anca Olteanu.  (Dkt. No. 30-9.)

10          Defendants Christopher Ford, Eric Gonzales, Merrill Lynch, and Napa PD moved to

11   dismiss this action.  (Dkt. Nos. 12, 28, 32, & 34.)  Plaintiff initially failed to respond to these

12   motions and the Court ordered Plaintiff to show cause by September 3, 2024 as to why her case

13   should not be dismissed for her failure to prosecute her case.  (Dkt. No. 39.)  Due to issues in the

14   Court's filing system, Plaintiff's subsequent filings, including her motion for leave to file an

15   amended complaint, were not entered into ECF until much later, but Plaintiff initially responded

16   with various filings submitted on September 4, 2024.  (Dkt. Nos. 44, 45, 46, 47, 48, 49, 50, 51, 52,

17   53, and 54.)  Plaintiff also subsequently filed a motion for a temporary restraining order.  (Dkt.

18   No. 57.)  Given Plaintiff's numerous filings, the Court vacated the hearing originally set for

19   October 10, 2024, and ordered Plaintiff to request leave of Court before submitting any more

20   pleadings.  (Dkt. No. 65.)  Plaintiff then filed a motion for leave to file a motion for a temporary

21   restraining order and a motion for temporary restraining order.  (Dkt. Nos. 72, 77.)  Most recently,

22   Plaintiff filed additional motions and requests for relief, including renewed motions for temporary

23   restraining orders, and a motion for summary judgment.  (Dkt. Nos. 81, 83, 84, 85, 87, 89.)  One

24   of Plaintiff's most recent filings is a motion for joinder of this case and her case now pending

25   before the Nevada District Court.  (Dkt. No. 81.)

26          Currently pending before the Court are Motions to Dismiss on behalf of Defendants Eric

27   Gonzales and Merrill Lynch (Dkt. No. 28), Christopher Ford (Dkt. No. 32), and Napa PD (Dkt.

28   No. 33), and Plaintiff's Motion for Preliminary Injunction (Dkt. No. 44), Motion to Remove

United States District Court
Northern District of California

1  Attorneys (Dkt. Nos. 49, 62), Motion for Joinder (Dkt. Nos. 50, 61), Motion for Leave to File her

2  Amended Complaint (Dkt. No. 52), Motions for Temporary Restraining Order (Dkt. Nos. 63, 72,

3  89), Motion for Writ of Mandamus (Dkt. No. 63), Motions for Leave to File her Temporary

4  Restraining Order (Dkt. Nos. 77 and 83), Motion to Join (Dkt. No. 81), Motion for leave to file

5  summary judgment (Dkt. No. 84), and Motion for Summary Judgment (Dkt. No. 85).

6      Plaintiff filed a motion for leave to file an amended complaint, along with a proposed

7  amended complaint, after the motions to dismiss were fully briefed and a few days after the

8  Court's deadline to show cause.  The Court GRANTS her motion for leave and considers the

9  amended complaint in deciding the motions to dismiss.

10                                **DISCUSSION**

11  **I.      Motion to Dismiss Legal Standard**

12      A complaint must contain a "short and plain statement of the claim showing that the

13  pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  To meet this requirement, the complaint

14  must provide "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v.*

15  *Twombly*, 550 U.S. 544, 570 (2007).  However, conclusory assertions are insufficient to state a

16  claim.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A claim is facially plausible when the

17  plaintiff pleads enough factual content to justify the reasonable inference the defendant is liable

18  for the misconduct alleged.  *Id.*

19      Even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), under

20  which a party is only required to make "a short and plain statement of the claim showing that the

21  pleader is entitled to relief," a "pleading that offers 'labels and conclusions' or 'a formulaic

22  recitation of the elements of a cause of action will not do.'"  *Iqbal*, 556 U.S. at 678 (*quoting*

23  *Twombly*, 550 U.S. at 555).  "[C]onclusory allegations of law and unwarranted inferences are

24  insufficient to defeat a motion to dismiss."  *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th

25  Cir.2004); *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("[A]llegations in a

26  complaint or counterclaim may not simply recite the elements of a cause of action, but must

27  contain sufficient allegations of underlying facts to give fair notice and to enable the opposing

28  party to defend itself effectively.").  The court must be able to "draw the reasonable inference that

United States District Court
Northern District of California

the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663. "Determining whether a complaint states a plausible claim for relief ... [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 663–64.

## II.    Judicial Notice

Plaintiff and certain Defendants ask the Court to take judicial notice of previous cases and dockets that relate to the underlying facts in this case. Generally, a district court cannot "consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6);" however, Federal Rule of Evidence 201 allows a district court to do so through judicial notice. *Khoja v. Orexigen Therapeutics, Inc*., 899 F.3d 988, 998 (9th Cir. 2018). A court can take judicial notice of facts "not subject to reasonable dispute" because they are "generally known within the court's territorial jurisdiction" or can be "accurately determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). This includes "undisputed matters of public record, including documents on file in federal and state courts." *Harris v. Cty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012). Further, "when a court takes judicial notice of another court's opinion, it may do so not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity." *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001) (cleaned up).

So, the Court takes judicial notice of the public records attached as evidence in this case, not for the truth of the matters asserted therein, but for their existence.

## III.    Merits of the Motions to Dismiss

Three motions to dismiss have been filed. The Court addresses each in turn.

### A.    Christopher Ford

Mr. Ford first moves under Federal Rules of Civil Procedure 12(b)(2) for dismissal for lack of personal jurisdiction.

On a defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of demonstrating that the exercise of personal jurisdiction over the defendant is proper. *See Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). "Where, as here, the motion is based on written materials rather than an evidentiary hearing, the

United States District Court
Northern District of California

1    plaintiff need only make a prima facie showing of jurisdiction to withstand the motion to

2    dismiss." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011).

3    California's long-arm statute allows the exercise of personal jurisdiction to the full extent

4    permissible under the U.S. Constitution.  *See Daimler AG v. Bauman*, 571 U.S. 117, 125

5    (2014); *see also* Cal. Code Civ. Proc. § 410.10 ("[A] court of this state may exercise

6    jurisdiction on any basis not inconsistent with the Constitution of this state or of the United

7    States.").  California's jurisdictional statute is coextensive with federal due process requirements,

8    and thus the jurisdictional analysis is the same.  *Schwarzenegger v. Fred Martin Motor Co.*, 374

9    F.3d 797, 800-801 (9th Cir. 2004).

10        Personal jurisdiction is either general or specific.  *Bristol-Myers Squibb v. Sup. Ct. of Cal.,*

11   *San Francisco Cnty.*, 582 U.S. 255, 262 (2017).  A court may properly exercise general

12   jurisdiction in a state where the individual is domiciled.  *Id.*  And a court has specific jurisdiction

13   when the suit "arises out of or relates to the defendant's contacts with the forum."  *Daimler AG*,

14   571 U.S. at 127 (cleaned up).  To establish specific jurisdiction, a plaintiff must show the

15   defendant undertook "some act by which it purposefully avails itself of the privilege of conducting

16   activities within the forum state."  *Ford Motor Co. v. Montana*, 592 U.S. 351, 359 (2021) (cleaned

17   up).  And further, the claims "must arise out of or relate to the defendant's contacts with the

18   forum" state.  *Id.* (cleaned up).

19        Mr. Ford argues, and Plaintiff does not contest, that Mr. Ford is a Nevada attorney with

20   law offices in Nevada.  (Dkt No. 32 at 4.)  As such, general jurisdiction does not apply.

21        As for specific personal jurisdiction, Plaintiff's complaint does not allege that Mr. Ford

22   undertook any actions outside of Nevada.  Instead, Plaintiff's only allegations against Mr. Ford

23   that note a specific location are her allegations that he colluded with the Henderson Nevada Police

24   and that he was involved in her husband's death in Nevada.  (Dkt. No. 52-2 at 31.)  Plaintiff did

25   not file an opposition to Mr. Ford's motion.  Instead, the first time she argues that this Court has

26   personal jurisdiction over him is in her Response to his Opposition to her Motion for Preliminary

27   Injunction.  (Dkt. No. 79.)  There, Plaintiff makes conclusory allegations that Mr. Ford's

28   involvement in the alleged conspiracy was sufficient to create specific personal jurisdiction.  (Dkt.

1  No. 79 at 4-5.)   Plaintiff's conclusory allegations are insufficient to establish personal jurisdiction

2  over Mr. Ford.

3       So, Plaintiff's claims against Mr. Ford are DISMISSED for lack of personal jurisdiction.

4  Further, Plaintiff's plethora of filings demonstrate leave to amend the complaint to allege facts to

5  support specific personal jurisdiction would be futile.  The dismissal of the claims against Mr.

6  Ford are without prejudice to Plaintiff bringing claims in a jurisdiction with personal jurisdiction

7  over him.

8       **B.  Eric Gonzales & Merrill Lynch**

9       Mr. Gonzales and Merrill Lynch make three arguments why the Court should dismiss

10  Plaintiff's claims against them: (1) the Court lacks subject matter jurisdiction over this case, (2) an

11  arbitration agreement governs the claims here, and (3) the complaint fails to state a claim for

12  relief.

13       **1.  Subject Matter Jurisdiction**

14       Federal Rules of Civil Procedure 12(b)(1) permits a party to assert a defense of lack of

15  subject matter jurisdiction.  A jurisdictional attack may be factual or facial.  *White v. Lee*, 227 F.3d

16  1214, 1242 (9th Cir. 2000).  A facial attack "asserts that the allegations contained in a complaint

17  are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373

18  F.3d 1035, 1039 (9th Cir. 2004).  "The district court resolves a facial attack as it would a motion

19  to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all

20  reasonable inferences in the plaintiff's favor, the court determines whether the allegations are

21  sufficient as a legal matter to invoke the court's jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117,

22  1121 (9th Cir. 2014).  But on a factual attack, a defendant presents extrinsic evidence, so "the

23  court need not presume the truthfulness of the plaintiff's allegations." *Safe Air for Everyone*, 373

24  F.3d at 1039.  "When the defendant raises a factual attack, the plaintiff must support [his]

25  jurisdictional allegations with 'competent proof,' under the same evidentiary standard that governs

26  in the summary judgment context." *Leite*, 749 F.3d at 1121 (citations omitted).

27       Defendant argues the Court lacks subject matter jurisdiction over this case because either

28  the probate exception applies, or because the *Rooker-Feldmen* doctrine applies.  Though

United States District Court
Northern District of California

Defendant attaches numerous exhibits to its motion, the attack is a facial one.  Defendants'

exhibits are not relevant to subject matter jurisdiction, but instead only delineate Plaintiff's

litigation history and detail the parties' trust agreement iterations.

The "probate exception reserves to state probate courts the probate or annulment of a will

and the administration of a decedent's estate; it also precludes federal courts from endeavoring to

dispose of property that is in the custody of a state probate court.  But it does not bar federal courts

from adjudicating matters outside those confines and otherwise within federal jurisdiction."

*Marshall v. Marshall*, 547 U.S. 293, 311-12 (2006). Courts have previously found that the probate

exception applies to trusts that are substitutes for wills.  *See Deutsch v. Klein*, No. 23-cv-2316 PA

(MAAx), 2023 WL 3075880, at *1-2 (C.D. Cal. Apr. 25, 2023), appeal pending 23-55479

(collecting cases).   Because the *Marshall* court narrowed the application of the probate exception

to federal jurisdiction, the Ninth Circuit has reiterated that it only applies where a federal court

would be called on to "(1) probate or annul a will, (2) administer a decedent's estate, or (3) assume

*in rem* jurisdiction over property that is in the custody of the probate court."  *Silk v. Bond*, 65 F.4th

445, 450 (9th Cir. 2023) (quoting *Goncalves v. Rady Children's Hosp. San Diego*, 865 F.3d 1237,

1252 (9th Cir. 2017)).

These Defendants argue Plaintiff's requested relief of removal of the trustee and an order

to provide disclosures of all transactions and financial records pertaining to the Trust are all

powers that fall outside of the Court's jurisdiction under the probate exception.  This is because,

they contend, the core of the allegations revolves around all Defendants' alleged actions relating to

the Trust created for the distribution and management of Plaintiff's late-father's assets.  (Dkt. No.

52-2 at 12.)  Defendants therefore argue the Court lacks subject matter jurisdiction because (1)

Plaintiff requests the Court "determine her rights with respect to the estate of her father, " and (2)

her claims against her mother are "an end-run around the state conservatorship process."  (Dkt.

No. 52-2 at 16-17.)  Not so.

While Plaintiff's allegations revolve around the Trust, Defendants have not shown why

such a conclusion is sufficient for this case to fall within "the ambit of the narrow exception."

*Marshall*, 547 U.S. at 305.  For example, Defendants do not identify which of the three recognized

situations of the probate exception each claim in this action falls under; but the only possible situation is that Plaintiff's claims involve "administer[ing] a decedent's estate." *Bond*, 65 F.4th at 450.

Here, the estate has been administered, the Trust is in existence, and Plaintiff has already brought claims regarding the Trust in state court upon the death of her father.  Even so, some of Plaintiff's requested relief does fall "within the confines of estate administration." *Morin v. Blevins*, No 7-cv-1061-AWI-TAG, 2007 WL 4557108 *3 (E.D. Cal. Dec. 21, 2007).  Insofar as Plaintiff seeks removal of Mrs. Olteanu as Trustee, such a request falls both within the ambit of administration of an estate and would seek to adjudicate the conservatorship issues Plaintiff is concurrently adjudicating in state probate court.  (Dkt. No. 30-9.)  Plaintiff's requests to remove Mrs. Olteanu as Trustee are based on her alleged mismanagement of the trust assets, which is "tantamount to asking the federal district court to take over the administration of the estate." *Jones v Brennan*, 465 F.3d 304, 307 (7th Cir. 2006).

But Plaintiff's claims, and most of her requests for relief, do not fall within the probate exception to subject matter jurisdiction, at least as far as the Court can tell based on the amended complaint.  For example, her wrongful death claims, which request as relief damages for loss of companionship and emotional distress, while related to the mismanagement of funds, do not involve administration of a decedent's estate.  (Dkt. No. 52-2 at 30-31,43.)  And Plaintiff's allegations of obstruction of justice and reckless endangerment are similarly far removed from asking the Court to "administer a decedent's estate." *Bond*, 65 F.4th at 450.

Defendants also have not shown that *Rooker/Feldman* deprives the Court of subject matter jurisdiction.  Under the *Rooker/Feldman* abstention doctrine, "a party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." *Johnson v. De Grandy*, 512 U.S. 997, 1006 (1994).   Plaintiff does not allege a state court has violated her rights.  Further, Defendants have not explained why "a state appeal could suffice" to vindicate Plaintiff's asserted rights.  (Dkt. No. 28 at 18.)  While Plaintiff's suit may seek to relitigate issues she had initially raised in her requests for Temporary Restraining

1    Orders filed in state court (Dkt. Nos. 30-7, 30-8), Defendants do not state, let alone prove, as

2    much.  Defendants' conclusory arguments that Plaintiff "seek[s] appellate review of her failed

3    attempts in state court to gain control over her mother's finances" (Dkt. No. 28 at 18), is

4    insufficient for the Court to conclude, as a matter of law, that it lacks jurisdiction over this case.

5    So, while the Court lacks subject matter jurisdiction to grant certain forms of relief, it retains

6    subject matter jurisdiction of the case.

### 2.  Arbitrability

8    Defendants next argue that Plaintiff is required to arbitrate her claims against them because

9    she is a "successor-in-interest" to arbitration agreements that were signed by her parents in

10    creating the Trust.  As the party seeking to compel arbitration, Defendants bear the burden of

11    proving the existence of an agreement to arbitrate.  *Johnson v. Walmart Inc.*, 57 F.4th 677, 681

12    (9th Cir. 2023).  When, as here, "the making of the arbitration agreement" is at issue, the summary

13    judgment standard applies. *Hansen v. LMB Mortg. Servs., Inc*., 1 F.4th 667, 670 (9th Cir. 2021)

14    (quoting 9 U.S.C. § 4).  To prevail under the summary judgment standard, Defendant must show

15    there is no genuine issue as to any material fact regarding formation of the arbitration contract. *Id*.;

16    *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

17    Plaintiff has failed to allege sufficient facts for this Court to decide the arbitrability of the

18    claims against these Defendants.  So, Defendants' motion to compel arbitration is DENIED

19    without prejudice.  Defendants may renew their motion to compel if and when Plaintiff files her

20    amended complaint.

### 3.  Failure to State a Claim

22    Plaintiff's allegations against Defendants Gonzales and Merrill Lynch do not plausibly

23    state any claim for relief.  As to Merrill Lynch, Plaintiff merely alleges they "consistently

24    obstructed" efforts to obtain information on the Trust assets.  (Dkt. No. 52-2 at 42.)  She further

25    alleges Defendant Gonzales was transferring funds from the Trust to foreign accounts to aid

26    Romanian criminals.  (*Id.* at 12-13, 36.)  All of these allegations are conclusory.  For example,

27    Plaintiff does not allege any facts that support an inference Defendant Gonzales actually

28    unlawfully transferred funds from the Trust to a particular foreign account.  In sum, Plaintiff does

United States District Court
Northern District of California

1   not allege facts that reasonably support the inference that she is entitled to any relief against these

2   Defendants.

3          Because Plaintiff has not pled sufficient facts to support her claims against Defendants

4   Gonzales and Merrill Lynch, her claims against them are DISMISSED.

5                  **C.  Napa PD**

6          Plaintiff alleges Napa PD failed to investigate her complaints against the other Defendants

7   (Cal. Penal Code § 832.7), was negligent in its supervision of police officers (Cal. Gov't Code §

8   34000), violated her Fourteenth Amendment Due Process Rights, failed to uphold its public duty

9   (Cal. Penal Code § 830.1), and made negligent misrepresentations about its investigation of

10  Defendants.  These claims are primarily based on Plaintiff's allegations that she reported the same

11  allegations she makes in her complaint to Napa PD and Napa PD did not act to arrest or stop any

12  of the Defendants.

13         Plaintiff's complaint fails to allege sufficient facts to create a reasonable inference that

14  Napa PD is liable for any misconduct.  The main purpose of the Rule 8 pleading requirement is

15  that parties may have "fair notice" of the misconduct they are accused of and "to enable the

16  opposing party to defend itself effectively."  *Starr v. Baca*, 652 at 1216.  Here, the allegations

17  against Napa PD are conclusory.  Plaintiff merely concludes Napa PD did not conduct an

18  investigation into her claims and does not allege facts that give Napa PD sufficient notice of what

19  misconduct is alleged against it.  No facts are alleged against Napa PD that could lead to a

20  plausible inference that Napa PD is liable to Plaintiff.

21         Furthermore, despite Plaintiff's various filings opposing certain motions and moving the

22  Court for other forms of relief, Plaintiff never filed an opposition to Napa PD's motion.  As

23  Plaintiff has had numerous opportunities to identify what facts she could allege if granted leave to

24  amend, but has not done so, the Court concludes leave to amend would be futile. The Court

25  therefore DISMISSES all of Plaintiff's counts against Napa PD with prejudice.

26                 **D.  Defendants Who Did Not Move to Dismiss**

27         The remaining Defendants (except Angela and Costin Niculescu) were all served but have

28

United States District Court
Northern District of California

1  not responded to Plaintiff's complaint.[4]  Because the Court would be required to consider the

2  merits of the claims against these Defendants were Plaintiff to seek a default judgment against

3  them, *see Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986), it does so now.

4          Plaintiff's allegations, as noted above, are conclusory and do not plausibly state any claim

5  against any of these Defendants.  Plaintiff's complaint is filled with "conclusory allegations of law

6  and unwarranted inferences."  *Adams*, 355 F.3d at 1183.  For example, Plaintiff makes the

7  conclusory allegation that the Niculescus "used their business accounts to launder" the funds from

8  the Trust.  (Dkt. No. 52-2 at 9.)  But Plaintiff does not allege any facts that plausibly support an

9  inference the Niculescus did so.  Further, from this conclusion Plaintiff makes yet another

10  conclusion—that these actions created "a financial crisis and contributed to the circumstances

11  surrounding" her husband's death.  (*Id.* at 32.)  No facts are pled that explain how the two are

12  related, let alone plausibly support an inference they occurred.

13          Plaintiff has already amended her complaint once, noting in her motion for leave to amend

14  that this new complaint would resolve these issues that already existed in her first complaint.  (*See

15  generally* Dkt. No. 52.)  However, Plaintiff's Amended Complaint does not resolve these issues.

16  So, the claims as to the remaining Defendants must also be dismissed.

17                                      **CONCLUSION**

18          For the reasons stated above:

19      1.  Plaintiff's motion for leave to file an amended complaint is GRANTED.

20      2.  Napa PD's Motion to Dismiss is GRANTED with prejudice.

21      3.  Christopher Ford's Motion to Dismiss for lack of personal jurisdiction is GRANTED

22          without leave to amend, but also without prejudice to bringing claims in a jurisdiction with

23          personal jurisdiction over him.

24      4.  Eric Gonzales and Merrill Lynch's Motion to Dismiss is GRANTED with leave to amend.

25          These Defendants' Motion to Compel Arbitration is DENIED without prejudice.

26  _____

27  [4] According to Plaintiff, Defendants Angela Niculescu and Costin Niculescu were not served
    because they left no forwarding address for service.  (Dkt. No. 13.)  Because the complaint suffers
28  the same deficiencies as to these Defendants, the Court will consider the merits for these
    Defendants together with Defendants who were served but failed to respond.

United States District Court
Northern District of California

5. The remaining claims in this lawsuit are DISMISSED with leave to amend for failure to state a claim.

6. Because Plaintiff has not sufficiently pled facts leading to a reasonable inference that she is entitled to relief against any Defendant, the Court further DENIES all of Plaintiff's remaining motions and requests.

Plaintiff may file an amended complaint **no later than November 22, 2024**. The amended complaint may not add any new defendants, and may not name Christopher Ford or Napa PD as a defendant.  Further, if Plaintiff files an amended complaint, she will have to serve it on the non-appearing defendants and file proofs of service on the docket.

Plaintiff is again reminded that she must first request leave of Court before filing any new motions with the Court.

This Order disposes of Docket Nos. 28, 32, 33, 44, 45, 49, 50, 52, 57, 59, 61, 62, 63, 72, 77, 81, 83, 84, 85, 87, & 89.

**IT IS SO ORDERED.**

Dated: October 30, 2024

JACQUELINE SCOTT CORLEY
United States District Judge

United States District Court
Northern District of California

17