1

2

3

4                    UNITED STATES DISTRICT COURT

5                   NORTHERN DISTRICT OF CALIFORNIA

6

7      ANDREEA MELISSA OLTEANU,                 Case No.  24-cv-02347-JSC

              Plaintiff,
8
                                               **ORDER RE: DEFENDANTS' MOTION
9           v.                                 TO COMPEL OR DISMISS &
                                               PLAINTIFF'S VARIOUS MOTIONS**
10     ERIC GONZALES, et al.,
                                               Re: Dkt. No. 104, 119, 120, 122, 123
              Defendants.
11

12

13          Plaintiff sues Defendants for an alleged financial conspiracy to syphon money from a trust.

14   (Dkt. No. 100.)[1]  Defendants Merrill Lynch, Pierce, Fenner & Smith Inc. ("Merrill Lynch"), and

15   Mr. Eric Gonzales (collectively, "Moving Defendants") move to compel arbitration or,

16   alternatively, dismiss the complaint.  (Dkt. No. 104.)  After carefully considering the arguments

17   and briefing submitted, the Court concludes oral argument is unnecessary, *see* Civ. L.R. 7-1(b),

18   and DENIES Moving Defendants' motion to compel, but DISMISSES Plaintiff's Second

19   Amended Complaint ("SAC") without further leave to amend.

20                                 **BACKGROUND**

21   **I.     SAC Allegations**

22          Plaintiff alleges Defendants formed "a complex and multifaceted scheme" to defraud her

23   "out of significant assets that rightfully belong to her as the primary beneficiary of the Michael &

24   Anca Olteanu Trust [the 'Trust']."  (Dkt. No. 100 ¶ 1.)  As with her First Amended Complaint

25   ("FAC"), Plaintiff makes several allegations as to all "Defendants."  The Court first summarizes

26   allegations made as to all Defendants and then as to each Defendant.

27   _____

28   [1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the
     ECF-generated page numbers at the top of the documents.

United States District Court
Northern District of California

**A. Allegations Summary**

"Defendants engaged in a concerted effort to embezzle funds, commit wire and mail fraud, breach fiduciary duties, and intentionally inflict emotional distress upon her." (*Id.*) Plaintiff alleges a scheme whereby Defendants embezzled money from the Trust to which she was the primary beneficiary. (*Id.*) Funds from the Trust were used to establish "a series of shell companies" in Romania which were themselves used to launder illicit funds. (*Id.* ¶ 12.) Plaintiff alleges this scheme led to "three assassination attempts" against her and ultimately to her husband's death. (*Id.* ¶ 33; 88-93.) Plaintiff brings the following causes of action:

(1) Racketeer Influenced and Corrupt Organizations Act ("RICO") Violations under 18 U.S.C. §§ 1961-1968;

(2) Wire Fraud under 18 U.S.C. § 1343;

(3) Mail Fraud under 18 U.S.C. § 1341;

(4) Money Laundering under 18 U.S.C. § 1956;

(5) Money Laundering under 18 U.S.C. § 1957;

(6) Violating the Bank Secrecy Act under 31 U.S.C. §§ 5311- 5330;

(7) Violating Title III of the Patriot Act, 31 U.S.C. § 5318;

(8) Violating the Foreign Account Tax Compliance Act, 26 U.S.C. §§ 6038D, 1471-1474;

(9) Child Financial Exploitation, 42 U.S.C. §§ 5101-5118e;

(10) Wrongful Death under California Civil Code § 377.60;

(11) Injunction of an Obstruction of Justice under 18 U.S.C. § 1514;

(12) Embezzlement and Conversion under 18 U.S.C. § 641;

(13) Breach of Fiduciary Duty under 29 U.S.C. § 1109;

(14) Intentional Infliction of Emotional Distress;

(15) Civil Conspiracy;

(16) Reckless Endangerment under 10 U.S.C. § 914;

(*See generally id.*) Plaintiff's opposition brief asserts claims 2-9, 10-12, and 16 "are not asserted as stand-alone causes of action under the cited statutes but rather as predicate acts to establish a pattern of racketeering activity" under RICO. (Dkt. No. 110 at 16-17.)

United States District Court
Northern District of California

United States District Court
Northern District of California

1    The Court recites allegations against each Defendant below.

2    **B. Eric Gonzales**

3    Mr. Gonzales is an employee of Merrill Lynch. (*Id.* at 10-11 ¶ i.) He "played a central

4    role in the scheme by using his position and expertise to facilitate the illegal transfer of Trust

5    assets to accounts controlled by himself and other Defendants." (*Id.*) He "initiate[d] fraudulent

6    transfers of Trust funds to accounts controlled by himself and co-conspirators," (*id.* ¶ 45) and

7    "[s]ent fraudulent account statements through the mail to misrepresent the financial status of the

8    Trust." (*Id.* ¶ 54.) Further, by "facilitating the embezzlement of Trust assets," he helped "create[]

9    the financial distress that led to" the death of Ms. Olteanu's late husband, Mr. Porcelli. (*Id.* ¶ 90.)

10    Plaintiff sues Mr. Gonzales for Claims 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 14, 15, & 16.

11    **C. Anca Olteanu**

12    Anca Olteanu, ("Mrs. Olteanu") is Plaintiff's mother and trustee of the Trust. (*Id.* at 11 ¶

13    ii.) She "conspired with other Defendants to misappropriate funds and transfer them to accounts

14    outside of the Plaintiff's reach." (*Id.*) She "authorized fraudulent transactions and concealed the

15    diversion of funds through falsified records." (*Id.* ¶ 45.) And she "[p]layed a role in transferring

16    and concealing Trust assets through opaque transactions." (*Id.* ¶ 71.) Mrs. Olteanu also

17    "intentionally directed laundered money into the bank accounts of the Plaintiff's minor children."

18    (*Id.* ¶ 81.) Finally, she "conspir[ed] with the other Defendants to misappropriate Trust assets,

19    further destabilizing the Plaintiff's financial situation and indirectly contributing to the

20    circumstances leading to [Mr. Porcelli's] death." (*Id.* ¶ 91.)

21    Plaintiff sues Mrs. Olteanu for all Claims.

22    **D. Louis Schneider**

23    Mr. Schneider is a Nevada attorney who "provided legal advice and representation to Anca

24    Olteanu and other Defendants, helping them to navigate legal challenges and avoid detection by

25    authorities." (*Id.* at 11 ¶ iii.) He "provided legal guidance to the enterprise, shielding its activities

26    from scrutiny" by "orchestrating fraudulent filings and aiding in obstructing investigations." (*Id.* ¶

27    45.) He further crafted "legal documentation and financial arrangements to legitimize the

28    proceeds of fraud." (*Id.* at 35.)

United States District Court
Northern District of California

1    Mr. Schneider "conspired to murder Mark Porcelli in order to seize his $550,000 in home

2    equity and other assets." (*Id.* ¶ 88.) "Schneider and Ford[2] were integral to obstructing the sale of

3    the Plaintiff's Nevada property," and these actions "created a dangerous environment that led

4    directly to [Mr. Porcelli's] murder." (*Id.* ¶¶ 88, 89.)

5    Plaintiff sues Mr. Schneider for Claims 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 14, 15, & 16.

6    **E.  Angela, Calin, & Calin Niculescu**

7    Angela, Calin and Costin Niculescu (the "Niculescus") "used their personal and business

8    accounts to launder the misappropriated funds, making it difficult for the Plaintiff to trace and

9    recover her assets." (*Id.* at 11-13 ¶ iv, vii.) "The Niculescu family used Anca Olteanu's accounts

10   for money laundering, sending $30,000/month via Western Union to California." (*Id.* at 25.)

11   Their actions obscured "the financial trail and worsen[ed] the Plaintiff's financial difficulties …

12   contributing to the financial turmoil that led to [Mr. Porcelli's] death." (*Id.* ¶ 92.)

13   Plaintiff sues the Niculescus under Claims 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 14, 15, & 16.

14   **F.  Merrill Lynch**

15   Merrill Lynch is a financial institution that manages the Trust and employs Mr. Gonzales

16   and it "failed to act in accordance with its legal and regulatory obligations by allowing the transfer

17   of Trust assets without proper authorization or oversight." (*Id.* at 12 ¶ v.) "Despite being notified

18   of the suspicious activities and the Plaintiff's concerns, Merrill Lynch failed to freeze the accounts

19   or investigate the transactions." (*Id.*) Merrill Lynch "[a]llowed the misuse of its financial systems

20   for fraudulent wire transfers by failing to detect and prevent suspicious transactions." (*Id.* ¶ 49.)

21   Merrill Lynch, like Mr. Gonzales, facilitated the embezzlement of Trust assets "which created the

22   financial distress that led to" Mr. Porcelli's death. (*Id.* ¶ 90.)

23   Plaintiff sues Merrill Lynch for Claims 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 12, 14, 15, & 16.

24   **G.  Banca BRD/Société Générale S.A.**

25   Banca BRD is a Romanian financial institution and Société Générale is a financial

26   institution in New York, (collectively, the "Financial Institutions"), and both "acted as a conduit

27   _____

28   [2] Mr. Ford is another attorney who was originally named a co-Defendant, but successfully
     dismissed all claims against him.

1    for the illegal transactions." (*Id.* at 12 ¶ vi.)  The Financial Institutions "facilitated the

2    international laundering of stolen Trust funds, failing to meet anti-money laundering (AML)

3    obligations and permitting cross-border financial crimes." (*Id.* ¶ 45.)  They "deliberately

4    structured financial transactions to avoid FACTA's withholding and reporting obligations." (*Id.* at

5    47.)  Finally, they failed to "monitor and report suspicious transactions, enabling the illegal

6    movement of Trust funds and contributing to the financial turmoil that led to" Mr. Porcelli's death.

7    (*Id.* ¶ 92.)

8         Plaintiff sues the Financial Institutions under Claims 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 12, 14, 15,

9    and 16.

10        **H.  Horia Tanasescu**

11        Mr. Tanasescu "facilitat[ed] the illegal activities of the other Defendants, including the

12   transfer and concealment of stolen funds." (*Id.* at 13 ¶ viii.)  He "acted as an intermediary,

13   supporting the financial logistics and assisting in the concealment of stolen funds." (*Id.* ¶ 45.)

14   And he "facilitated the laundering of stolen assets, obscuring the financial trail and worsening the

15   Plaintiff's financial difficulties" which ultimately "led to [Mr. Porcelli's] death." (*Id.* ¶ 92.)

16        Plaintiff sues Mr. Tanasescu under Claims 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 12, 14, 15, and 16.

17   **II.    Procedural Background**

18        Plaintiff filed a conservatorship against Mrs. Olteanu in Solano County Superior Court in

19   June of 2020, alleging Mrs. Olteanu was senile and could not effectively manage the Trust.  (Dkt.

20   No. 30-1.)  After an investigation into Mrs. Olteanu's mental and physical state, Plaintiff

21   voluntarily dismissed her conservatorship action.  (Dkt. No. 30-2.)  In July of 2023, Plaintiff filed

22   suit in the United States District Court for the District of Hawaii, alleging substantially the same

23   facts as she does in the present suit.  (*See* Dkt. No. 30-3.)  After amending her complaint once, that

24   court dismissed Plaintiff's action for improper venue.  (*See* Dkt. Nos. 30-5, 30-6.)  In December of

25   2023, Plaintiff filed suit in the United States District Court for the District of Nevada, alleging the

26   same wrongdoing as she does here, though that action also includes certain Nevada defendants not

27   present in the current action.  *See Olteanu v. Schneider et al*, No. 2:23-cv-02006 (D. Nev. 2023).

28   While that action is currently pending, the court previously dismissed Plaintiff's amended

United States District Court
Northern District of California

United States District Court
Northern District of California

1    complaint and is currently reviewing Plaintiff's amended complaint pursuant to 28 U.S.C. § 1915.

2    *Id.* (Dkt. No. 74.)  In April 2024, Plaintiff initiated this action in this District.  (Dkt. No. 1.)   The

3    following month, Plaintiff instituted two actions in Napa Superior Court requesting temporary

4    restraining orders against certain defendants against whom she requests injunctive relief here.

5    (Dkt. Nos. 30-7, 30-8.)  Those actions have been dismissed.  (*See* Dkt. Nos. 30-7, 30-8.)  Days

6    after initiating emergency actions in Napa Superior Court, Plaintiff instituted a second

7    conservatorship proceeding in Solano County Superior Court against her mother, Defendant Anca

8    Olteanu.  (Dkt. No. 30-9.)

9         In this action, Defendants Christopher Ford, Eric Gonzales, Merrill Lynch, and Napa PD

10   successfully moved to dismiss the FAC.  (Dkt. Nos. 12, 28, 32, 33, 93.)  Ford and Napa PD were

11   dismissed without leave to amend, but the claims against the other defendants were dismissed with

12   leave to amend.  (Dkt. No. 93.)  The Court also dismissed several motions Plaintiff had filed

13   requesting various forms of relief.  (*Id.*)  Plaintiff unsuccessfully moved for reconsideration and

14   subsequently filed her SAC.  (Dkt. Nos. 99, 100.)  Moving Defendants now seek to compel the

15   matter to arbitration or, alternatively, to dismiss for failure to state a claim.  (Dkt. No. 104.)  Soon

16   after Moving Defendants filed their motion to dismiss, Plaintiff unsuccessfully moved for an entry

17   of default judgment as to Mrs. Olteanu. (Dkt. Nos. 106, 107.)

18        Since briefing the motion to dismiss, Plaintiff has once again filed several motions seeking

19   various forms of relief.  (Dkt. Nos. 113, 115, 116, 119, 120, 122, 123.)  The Court previously

20   denied Plaintiff's motions for evidentiary hearings and preliminary injunctions (Dkt. Nos. 114,

21   117), and below rules on any outstanding motions.

22         Moving Defendants move to compel the case into arbitration for the same reasons

23   previously submitted.  (Dkt. No. 104 at 5.)  Moving Defendants alternatively seek to dismiss the

24   complaint for failure to state a claim as to each of Plaintiff's causes of action.

25                                    **ANALYSIS**

26   **I.      Moving Defendants' Motion to Compel**

27        As the party seeking to compel arbitration, Defendants bear the burden of proving the

28   existence of an agreement to arbitrate. *Johnson v. Walmart Inc.*, 57 F.4th 677, 681 (9th Cir.

1    2023).  When, as here, "the making of the arbitration agreement" is at issue, the summary

2    judgment standard applies. *Hansen v. LMB Mortg. Servs., Inc*., 1 F.4th 667, 670 (9th Cir. 2021)

3    (quoting 9 U.S.C. § 4).  To prevail, Defendants must show there is no genuine issue as to any

4    material fact regarding formation of the arbitration contract.  *Id.*

5    　　　Plaintiff's FAC "failed to allege sufficient facts for this Court to decide the arbitrability of

6    the claims against these Defendants."  (Dkt. No. 93 at 14.)  But despite the Court's prior ruling,

7    Moving Defendants do not argue the SAC resolves that issue.  They instead insist, "[f]or the

8    reasons stated in [Moving Defendants'] prior filings, [Moving Defendants] respectfully contend

9    that Plaintiff is bound by the arbitration agreements and this matter should be compelled to

10   arbitration."  (Dkt. No. 104 at 11.)  Because Moving Defendants have not shown or alleged how

11   the SAC pleads sufficient facts for the Court to compel arbitration, the Court does not now do so.

12   So, Moving Defendants' motion to compel is DENIED.[3]

13   **II.      Moving Defendants' Motion to Dismiss**

14   　　　A complaint must contain a "short and plain statement of the claim showing that the

15   pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  To meet this requirement, the complaint

16   must provide "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v.*

17   *Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads

18   factual content that allows the court to draw the reasonable inference that the defendant is liable

19   for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).  And

20   while "[t]he plausibility standard is not akin to a 'probability requirement,' [] it asks for more than

21   a sheer possibility that a defendant has acted unlawfully."  *Id.*

22   　　　**A.  Whether the Complaint was Ghostwritten – Pleading Standard**

23   　　　"[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards

24   than formal pleadings drafted by lawyers."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (cleaned

25   up); *see also Vitale v. Wells Fargo Bank Nat'l Ass'n*, No. 23-cv-06019-BLF, 2024 WL 4469184,

26   at *4-5 (N.D. Cal. Oct. 9, 2024) (applying the liberal pleading standard to a pro se complaint).

27

28   _____
[3] The Court will not address Moving Defendants' arguments for arbitrability made for the first
time in Reply.

United States District Court
Northern District of California

7

1    Moving Defendants urge the Court not to apply the liberal pleading standard to Plaintiff's

2    complaint on the grounds an attorney ghostwrote her filings.  (Dkt. No. 104 at 11-14.)  *See Duran*

3    *v. Carris*, 238 F.3d 1268, 1272 (10th Cir. 2011) (collecting cases holding attorneys ghostwriting

4    briefs constitutes "misrepresentation to [the] court by litigant and attorney," and on that ground

5    deny unrepresented plaintiffs a liberal standard).

6         As a preliminary matter, Moving Defendants have not shown an attorney ghostwrote the

7    SAC.  Moving Defendants point to three pieces of evidence: (1) a draft filing Plaintiff sent in

8    September 2024 that allegedly included a comment for the drafter (Dkt. No. 104-3 at 4); (2) an

9    email showing Plaintiff forwarded a news article to "Mr. Beautah" indicating "News to

10   incorporate in *our Motion* for an emergency hearing," (Dkt. No. 104-6 at 1 (emphasis added)); and

11   (3) the SAC's prayer for relief, which seeks to recover legal fees.  (Dkt. No. 104 at 12-14.)  First,

12   that there was a comment for a drafter does not prove an attorney ghostwrote that brief; at most, it

13   suggests Plaintiff was assisted in drafting that brief.  Second, the FAC seeks attorneys fees

14   incurred prior to this action, for example, $35,000 in fees to "rectify the inheritance" in 2018.

15   (Dkt. Nos. 100 at 24; 110 at 9-11.)  So, the prayer for relief demand for attorneys fees does not

16   mean an attorney ghostwrote the FAC.  Finally, Moving Defendants fail to show "Mr. Beautah" is

17   an attorney or that he ghostwrote any of Plaintiff's filings.  Moving Defendants do not identify

18   evidence that suggests the Mr. Beautah they found through a Google search to be a Kenyan lawyer

19   is the same Mr. Beautah with whom Plaintiff corresponded.

20        But, as explained below, the SAC fails to plead sufficient facts to survive a 12(b)(6)

21   motion, even under the "less stringent standard[]."  *Erickson*, 551 U.S. at 94.

22             **B.  The SAC Allegations as to Moving Defendants**

23        Even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), under

24   which a party is only required to make "a short and plain statement of the claim showing that the

25   pleader is entitled to relief," a "pleading that offers 'labels and conclusions' or 'a formulaic

26   recitation of the elements of a cause of action will not do.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678

27   (2009) (quoting *Twombly*, 550 U.S. at 555).  "[C]onclusory allegations of law and unwarranted

28   inferences are insufficient to defeat a motion to dismiss."  *Adams v. Johnson*, 355 F.3d 1179, 1183

United States District Court
Northern District of California

8

1    (9th Cir. 2004); *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("[A]llegations in a

2    complaint or counterclaim may not simply recite the elements of a cause of action, but must

3    contain sufficient allegations of underlying facts to give fair notice and to enable the opposing

4    party to defend itself effectively."). The court must be able to "draw the reasonable inference that

5    the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663.

6         Under Federal Rule of Civil Procedure 9, "[i]n alleging fraud or mistake, a party must state

7    with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "To

8    comply with Rule 9(b), allegations of fraud must be specific enough to give defendants notice of

9    the particular misconduct which is alleged to constitute the fraud charged so that they can defend

10   against the charge and not just deny that they have done anything wrong." *In re Finjan Holdings,*

11   *Inc.*, 58 F.4th 1048, 1057 (9th Cir. 2023) (cleaned up). In other words, "[t]he complaint must

12   specify such facts as the times, dates, places, benefits received, and other details of the alleged

13   fraudulent activity." *Id.* (cleaned up). Here, Moving Defendants argue, and Plaintiff does not

14   contest, the SAC's allegations sound in fraud and allege a fraudulent scheme for which Rule 9's

15   particularity requirements apply. (*See* Dkt. No. 110 at 13-14.)

16        Plaintiff's allegations against Moving Defendants do not plausibly state any claim for

17   relief, as her SAC does not rectify the conclusory pleading of her previous complaint. For

18   instance, Plaintiff alleges Mr. Gonzales "initiate[d] fraudulent transfers of Trust funds to accounts

19   controlled by himself and co-conspirators." (Dkt. No. 100 ¶ 45.) And that Merrill Lynch

20   "[a]llowed the misuse of its financial systems for fraudulent wire transfers by failing to detect and

21   prevent suspicious transactions." (*Id.* ¶ 49.) So, these actions "created the financial distress that

22   led to" Mr. Porcelli's death. (*Id.* ¶ 90.) These allegations do not plead "factual content that allows

23   the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

24   *Iqbal*, 556 U.S. at 678 (citations omitted). Instead, Plaintiff merely pleads the legal elements of

25   claims for fraud. Further, she fails to plead facts that lead to a reasonable inference that any acts

26   or omissions lead to Mr. Porcelli's unfortunate death. Plaintiff's allegations as to each cause of

27   action fare no better, as the same underlying, conclusory allegations are repeated throughout the

28   SAC. And such conclusory pleading which does not meet the standards of Rule 8 also fails under

United States District Court
Northern District of California

9

1    Rule 9(b). *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003) ("When an

2    entire complaint, or an entire claim within a complaint, is grounded in fraud and its allegations fail

3    to satisfy the heightened pleading requirements of Rule 9(b), a district court may dismiss the

4    complaint or claim.").

5        Because Plaintiff has not pled sufficient facts that reasonably support an inference she is

6    entitled to any relief against Moving Defendants, her claims against them are DISMISSED.

7    **III.    Defendants Who Did Not Move to Dismiss**

8        Remaining Defendants did not respond to the SAC.  Their lack of response is unsurprising,

9    since when the Court dismissed the FAC, the Court ordered that "if Plaintiff files an amended

10   complaint, she will have to serve it on the non-appearing defendants and file proofs of service on

11   the docket" (Dkt. No. 93), but Plaintiff failed to do so.  Because the Court would be required to

12   consider the merits of the claims against these Defendants were Plaintiff to seek a default

13   judgment against them, *see Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986), it does so

14   now.[4]

15       As to the Remaining Defendants, the SAC is replete with "conclusory allegations of law

16   and unwarranted inferences." *Adams*, 355 F.3d at 1183.  By way of example, in alleging all

17   Defendants engaged in wire fraud, Plaintiff baldly alleges "Defendants engaged in a deliberate

18   scheme to defraud the Plaintiff through the use of interstate wire communications."  (Dkt. No. 100

19   ¶ 48.)  She further alleges Mrs. Olteanu "[a]uthorized and directed fraudulent transfers" and Mr.

20   Schneider "[c]oordinated with co-conspirators through emails."  (*Id.* ¶ 49.)  These "allegations"

21   merely conclude Defendants acted wrongfully without alleging facts supporting a reasonable

22   inference of wrongful actions.  Similarly, as to her wrongful death claim, Plaintiff alleges the

23   Niculescus "facilitated the laundering of stolen assets, … worsening the Plaintiff's financial

24   difficulties" and Financial Institutions "failed in [their] duty to monitor and report suspicious

25   transactions … contributing to the financial turmoil that led to" Mr. Porcelli's death.  (*Id.* ¶ 92.)

26   But, again, Plaintiff does not include factual allegations to support either that these Defendants

27   _____

28   [4] Plaintiff already unsuccessfully sought default judgment against one such Defendant, Mrs. Olteanu.  (Dkt. No. 106.)

United States District Court
Northern District of California

United States District Court
Northern District of California

1    acted wrongfully or that any financial difficulty to Plaintiff caused the death of her late husband.

2    In other words, the SAC does not include facts that permit the Court to "draw the reasonable

3    inference that [any] defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663.  So,

4    the claims as to the Remaining Defendants are also DISMISSED.  *See Hebbe v. Pliler*, 627 F.3d

5    338, 341–42 (9th Cir. 2010) (although pro se pleadings are to be liberally construed, a plaintiff

6    must still present factual allegations sufficient to state a plausible claim for relief).

7    **IV.    Plaintiff's Remaining Motions**

8           Because Plaintiff has not sufficiently pled facts leading to a reasonable inference that she is

9    entitled to relief against any Defendant, the Court further DENIES all of Plaintiff's remaining

10   motions and requests to file motions.

11                                     **CONCLUSION**

12          For the reasons stated above, the Court DENIES Moving Defendants' motion to compel

13   arbitration, but GRANTS their motion to dismiss Plaintiff's SAC.  Further, all claims in the SAC

14   as to the Remaining Defendants are DISMISSED as the SAC does not plead facts that support a

15   plausible inference any defendant is liable to Plaintiff.  And Plaintiff's outstanding motions and

16   requests for relief are DENIED because Plaintiff has not stated a claim upon which relief can be

17   granted.

18          The SAC is dismissed WITHOUT LEAVE TO AMEND as further leave would be futile.

19   After the motion to dismiss the original complaint was fully briefed, Plaintiff moved for leave to

20   file an amended complaint. She claimed the amended complaint would resolve the issues raised by

21   the motions to dismiss. (*See generally* Dkt. No. 52.)  The Court granted Plaintiff's motion and

22   considered the motions to dismiss as to the allegations of the FAC.  But the FAC did not cure the

23   deficiencies raised by the motions to dismiss; so, the Court granted the motions to dismiss and

24   specifically advised Plaintiff that her pleading did not include any factual allegations—as opposed

25   to conclusions—supporting liability as to any Defendant. (Dkt. No. 93.)  The SAC still does not

26   include any factual allegations to support her conclusory fraud allegations.  So, it is apparent

27   further leave to amend would be futile. *See Weilburg v. Shapiro*, 488 F.3d 1202, 1205 (9th

28   Cir.2007) (dismissal of a pro se complaint without leave to amend is proper if it is clear that

                                            11

1   amendment would be futile).

2       This Order disposes of Docket No. 104, 119, 120, 122, and 123.

3       **IT IS SO ORDERED.**

4   Dated: April 14, 2025

5

6                                                    _____
                                                     JACQUELINE SCOTT CORLEY
7                                                    United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

12